| 75 | 321 |
| 127 | 692 |

## ROBERTS v. MORRISON.

1. **Promissory Notes:** ACTION ON: MISJOINDER: NO PREJUDICE. Plaintiff in an original petition declared on three promissory notes, and in an amendment he set up what defendant denominated a cause of action for fraud and conspiracy, and the latter now complains that the trial court refused to strike the amendment from the files, and thus permitted a misjonder of causes of action, and let in evidence prejudicial to him. But since the evidence complained of was not irrelevant to the issues raised on the action on the notes, and the jury found against defendant on those issues, *held* that the misjoinder, if there was any, was without prejudice.

2. **Witnesses:** IMPEACHMENT: WEIGHT OF EVIDENCE: INSTRUCTIONS. A witness was sought to be impeached, and six witnesses testified that his reputation for truth and veracity was bad, and nine that it was good. The court, in an instruction, said : " If you find that his credibility is sustained by as many credible witnesses as discredit his credibility, he cannot properly be held or found to be impeached." *Held* that this, standing alone, was not correct, but that, when considered with the rest of the charge, as it should be, the jury must have understood the court to mean that if not less than six of the nine witnesses who discredited the witness sought to be impeached were equally as credible as the six who testified to the contrary, then he could ;not be regarded as impeached ; and that, so considered, the instruction was not erroneous.

3. **Promissory Notes:** EXECUTION: EVIDENCE. Defendant denied executing the notes in suit, but the jury found against him on that issue. His name was William T. Morrison, and he had a nephew named William Alexander Leroy Morrison. The notes were signed simply " William Morrison." It was shown that defendant had signed other papers in that way, and there was evidence from which the jury might have found that he signed the notes in person. There was evidence, also, from which the jury might have found that they were signed by the nephew, with the understanding and intention between him and the nephew that the signature should be imposed on the plaintiff as that of the defendant, and it was shown that he obtained a large portion of the property for which the notes were given, and that the nephew was a minor and insolvent. *Held* that the verdict against defendant could not be disturbed for want of evidence.

*Appeal from Madison District Court.*—HON. O. B. AYRES, Judge.

FILED, OCTOBER 3, 1888.

ON the twenty-second day of November, 1886, the plaintiff filed his original petition, in which he demanded judgment against defendants Joshua and William Morrison for the amount of three promissory notes set out in the petition. Judgment was rendered against Joshua. On the sixteenth day of February, 1887, appellant filed his separate answer, in which he denied that he had executed the notes, and alleged that the several signatures thereto were not his genuine signatures. This answer was verified. May 4, 1887, plaintiff filed an amendment to his petition, in which he alleged in substance that the notes in suit were given for stock purchased at a public sale held by plaintiff; that they were given on the part of the makers in pursuance of a conspiracy between appellant and Joshua and their nephew, William A. Morrison, for the purpose of cheating and defrauding plaintiff; that by the terms of said conspiracy Joshua was to attend the sale, and buy a large amount of property, with the express understanding with plaintiff that appellant should sign the notes to be given therefor as surety, and that, when said notes matured, it should appear that the nephew, who was an irresponsible minor, had signed the notes, instead of appellant; that appellant was to receive the greater part of the property to be so purchased; that stock was purchased, and notes delivered, pursuant to said conspiracy; that appellant either signed said notes in person, or authorized the nephew to sign the name of William Morrison to them, and assented to the fraud practiced on plaintiff and consummated; that appellant secured a large share of the property so purchased; and that Joshua was insolvent. On the seventh day of May, 1887, appellant filed an answer to the petitions as amended, in which he denied each and every allegation thereof. On the twelfth day of May 1887, appellant

filed a motion for leave to withdraw his answer, and to strike certain portions of the amendment to the petition, on the ground that they were irrelevant to the original cause of action, and that, considered as stating a cause of action for fraud and conspiracy, they were improperly joined. The motion was overruled, and the trial commenced on the same day. On the next day plaintiff filed a reply, in which he repeated in substance the matter set out in his amendment to the petition. This does not seem to have been attacked by appellant. The cause was tried to a jury, and a verdict returned in favor of plaintiff for the amount of the notes, to-wit, $764.37. A motion for a new trial having been overruled, judgment was rendered in favor of plaintiff for the amount of the verdict and costs, and William Morrison appeals.

*V. Wainwright* and *Barcroft & Bowen*, for appellant.

*Dabney & Guiher* and *John Leonard*, for appellee.

ROBINSON, J.—I.    The first question we are required to determine is the correctness of the ruling of the court on the motion for leave to withdraw answer, and to strike.    Counsel for appellant urge strenuously that the rulings permitted a misjoinder of causes of action, and that, notwithstanding the fact that the jury based their verdict on the notes, and not on the alleged fraud, yet the latter was in issue, and the evidence given to establish it was of a nature to prejudice appellant.    We do not find it necessary to consider this branch of the question. One of the theories upon which the case was tried was that appellant had, by his participation in the alleged conspiracy, authorized his nephew to sign the notes in suit in his name, or in a name which it is shown he used in signing written instruments.    The evidence, which might have been competent to sustain a claim based on fraud, also tended to show that the nephew had signed the

1. PROMISSORY notes: action on: misjoinder: no prejudice.

notes as the agent of appellant.   Under the issues presented by the so-called "reply," this evidence was competent.   Since the jury found, in effect, that appellant had made the notes in suit, the action of which appellant complains as erroneous must have been without prejudice.

II.   John R. Morrison, a brother of defendant's, gave testimony as to the alleged conspiracy, which was material as bearing upon the question of the

2. WITNESSES: impeachment: weight of evidence: instructions.

authority of the nephew to append the name of appellant to the notes.   Six witnesses testified that John's reputation for truth and veracity in the neighborhood where he lived was bad; nine others testified that it was good.   The court charged the jury, in regard to this, as follows:   "There has been evidence introduced tending to show the reputation of the witness John Morrison for truth and veracity in the neighborhood in which he lives. If you believe from all the evidence introduced on the subject, that said witness' reputation for truth and veracity in the neighborhood where he lives is bad, you will consider the fact as bearing upon his credibility as a witness; but you should not for that reason alone entirely disregard his testimony—especially in those particulars, if any, in which he is corroborated by other credible witnesses, or by facts and circumstances shown by the evidence in this case.   If you find that his credibility is sustained by as many credible witnesses as discredit his credibility, he cannot properly be held or found to be impeached." It is insisted by appellant that the last sentence of the paragraph quoted is erroneous.   If the jury might have concluded from the charge as a whole that this sentence instructed them that the testimony of all credible witnesses was entitled to equal weight, then it was not only erroneous, but probably prejudicial.   Facts are established, not by the greater number of witnesses, but by the greater weight or value of the evidence given.   But in this case the jury were told that the court "has not attempted or intended to embody in any one instruction all of the law applicable to the case.

You are to consider and construe together all of the instructions, and apply them as a whole to the evidence in the case." In the paragraph of the charge immediately following that to which objection is made, the jury are told that "in determining the issues in this case, you should take into consideration the whole of the evidence, and all of the facts and circumstances proved on the trial, giving to the several parts of the evidence such weight as you think they are entitled to; and, in determining the credibility and weight to be given to the testimony of the several witnesses, you should take into consideration their interest in the result of the suit; his or her conduct and demeanor while testifying; his or her apparent candor or bias, if any such appears; his or her prejudice or feeling for or against either party, if any such appears; the reasonableness or unreasonableness of the story told; and all the evidence and circumstances tending to corroborate or contradict any or all of the witnesses; and from all these matters and things determine and give to the testimony of each and all of the witnesses such weight as you, in the exercise of your best judgment, believe the same fairly entitled to at your hands. You are not bound to take the testimony of any witness as absolutely true; and you should not do so if you are satisfied, from all the facts and circumstances proved on the trial, that such witness is mistaken in the matters testified to by him or her, or that from any other reason his or her testimony is untrue or unreliable." Taking the charge as a whole, it is evident that the court did not instruct the jury that they must give equal weight to the testimony of all credible witnesses. The liability of a credible witness to be mistaken is recognized. The jury must have inferred from the portion of the charge in question that, if not less than six of the nine witnesses who testified that the reputation of John R. Morrison for truth and veracity were equally as credible as the six witnesses who testified to the contrary, then his credibility had not been impeached; and this, we think, was correct. We do not approve the language used by the court; but hold that, as modified

Roberts v. Morrison.

and explained by other portions of the charge, it could not have been prejudicial. *State v. Pierce*, 65 Iowa, 89 ; *Dixon v. Stewart*, 33 Iowa, 128.

III. The sufficiency of the evidence to sustain the verdict of the jury has been discussed by counsel at considerable length. It is not necessary for us to review the arguments made. Appellant claims that his name is William T. Morrison ; but signatures admitted to have been made by him, where the signature was like those attached to the notes in suit, *i. e.*, "Wm. Morrison," or "William Morrison," were admitted in evidence. He received a considerable number of the cattle purchased. Evidence was given which tended to show that a conspiracy was formed as alleged ; that appellant was fully advised in regard to it, and participated in it ; and that he knew that the notes were to be signed by the nephew, and delivered to plaintiff as his own. The name of the nephew was William Alexander Leroy·Morrison, hence the signatures appended to the notes more nearly represented the true name of appellant than of the nephew. Evidence was submitted from which the jury might have found that appellant himself signed the notes, or that they were signed by the nephew with his knowledge and assent. In our opinion the evidence sustains the verdict.

*3. Promissory notes: execution: evidence.*

AFFIRMED.